LEE J. CHAPMAN v. JOHN F. PFARR ET AL., Appellants.

**Negligence in sale of illuminating oil:** DUTY OF DEALER TO TEST:
1 STATUTES. The statutes relating to the sale of illuminating oil do not require that a dealer shall provide himself with means for making a closed test of the oil to determine the amount of combustible vapor therein; and there is no requirement that he

shall call an inspector to determine the character of the oil in a *properly branded barrel; but upon receiving information which* would lead a reasonably prudent person to think that the oil did not correspond to the brand on the barrel it becomes his duty to make such inspection as would reasonably determine whether the same is in fact dangerous; and what is a reasonable inspection by the seller under the circumstances,. or whether he should call in the State inspector, or have an expert make a closed test, or whether the test as made by himself was sufficient are questions for the jury.

**Personal injury:** DAMAGES: CAUTIONARY INSTRUCTION. Where it is apparent that the evidence in a case is likely to appeal very strongly to the sympathy of the jurors; as where the plaintiff is suing for personal injuries to himself, and for the death of his wife and children from an explosion of illuminating oil, and the rules of law limit his recovery to the loss of time and suffering of his own injuries, loss of his wife's society and services, and the society and services of his children, the court should give a cautionary instruction directing the jury not to allow any question of sympathy or sentiment to control them, but to base any verdict they may find for plaintiff wholly upon the evidence. In the instant case the verdict. is held so excessive as to indicate passion and prejudice.

**Same:** NEGLIGENCE: FACT QUESTION. Under the circumstances of this case it is held that the question of whether defendant's agent acted as a reasonably prudent man in continuing to sell oil after a warning that it was inflammable, without calling for an official inspection or making a more thorough or different test than that which he did make, was for the jury.

*Appeal from Harrison District Court.*—HON. W. R. GREEN, Judge.

MONDAY, DECEMBER 20, 1909.

ACTION to recover damages to plaintiff from personal injury to himself and from the death of his wife and three children, resulting from an explosion of coal oil purchased by plaintiff's wife from defendants. Plaintiff alleged that defendants through their agent were negligent in selling said oil after notice that it was dangerous, and without having the oil inspected or examined by an oil inspector.

The allegation of negligence was denied, and on a trial of the issues there was a verdict for plaintiff in the sum of $2,106.80, which the court on motion reduced to $1,381.80, giving plaintiff the option of accepting judgment for that amount or submitting to a new trial. Plaintiff elected to take judgment for the reduced amount, and defendants appeal.—*Reversed.*

*C. A. Bolter* and *Shaw, Sims & Kuehnle,* for appellants.

*S. H. Cochran,* for appellee.

McClain, J.—The evidence, so far as it is necessary to consider it on this appeal, tended to show the following state of facts: Defendants were conducting at the town of Pisgah a department store under the management of one Strong, in which coal oil was kept for sale at retail. Three or four weeks prior to the accident Strong received at the store a barrel of coal oil bearing the stamp of the state oil inspector, showing a flash test of the contents at one hundred and six degrees, and this was the only barrel of oil from which sales were made to customers from the time of its receipt until after the accident. Strong used oil from this barrel for filling lamps in the store, and for sprinkling the floor, without discovering that it was not of the purity and standard indicated by the inspector's stamp. It was sold to and used by various customers without complaint, save that about a week or ten days after the receipt of the barrel Strong's daughter, who was employed in the store, received from one Booth a telephone message to the effect that his landlady told him that in lighting a fire from the oil there was a flash, as though it might contain gasoline or something of that kind, and that a test ought to be made of it. This communication was transmitted to Strong by his daughter, and in her presence he

put some of the oil from the barrel into a saucer and took it into the alley at the rear of the store, where he tested it by lighting matches and holding them at the surface of the oil, without securing any flame or flash. Thereupon the daughter telephoned to Booth that the oil had been tested and was all right. About two weeks after this test the wife of plaintiff purchased a gallon of oil, which she took home with her in a can, and with plaintiff's assistance used it for lighting a fire in a cook stove, in which there had been no fire since the preceding day. The oil was poured upon cobs in the stove, and the open can was placed on the floor near by. When a match was applied to the cobs, there was an explosion, resulting in slight injury to plaintiff and severe injuries to his wife and three of his children, from which the wife and children died within a short time. On information sent to the chief oil inspector at Des Moines immediately after the accident, a deputy, one Cousins, was sent to inspect the oil in the barrel from which the sale had been made to plaintiff's wife, and this inspector discovered by putting some of the oil into a cup and holding a lighted match above the oil and below the top of the cup, that there was a flash. This the deputy inspector testified was the usual way of making a test where there was no special apparatus at hand. A subsequent thorough test of the oil showed it contained twenty-one percent of gasoline.

I. An instruction in the following language was given to the jury:

The specific allegation of negligence made in the petition is that A. L. Strong, agent of the defendants, failed to have the oil in question inspected or examined by an oil inspector. On this point you are instructed that as Strong was the agent of the defendants, carrying on their store, his negligence, if any, would in law be the negligence of the defendants. It was his duty to use reasonable and ordinary care not to sell oil which did not conform to the test required by law. In the first instance, and until he

had knowledge to the contrary, or such notice as would put a reasonably prudent man upon inquiry which would lead to such knowledge, he had the right to rely upon the inspector's stamp or brand upon the barrel from which the oil was taken. If, however, such information came to him prior to the accident as would put an ordinarily prudent person upon inquiry and investigation that would have developed, *through inspection by the state oil inspector,* the fact that the oil in question was not up to the required test, then he was negligent in not making such investigation, or having it made before making further sales of the oil. In this connection it becomes important to determine whether the test which Strong made and the results which he obtained therefrom were such as to justify an ordinarily prudent man in believing that the oil in question was up to the required standard. *The statute, you will observe, required a closed test.* In determining this question you should take into consideration, not only the manner in which he made the test, *but also the testimony of experts as to what such a test would disclose,* so far as it bears thereon, and all the facts and circumstances known to Strong at the time, and therefrom, together with all the evidence bearing thereon, determine whether the said Strong was negligent *in not having the oil inspected by a state oil inspector,* and if you find he acted as a man of ordinary prudence would under like circumstances, then he was not negligent, and plaintiff can not recover herein.

Italics are used in the instruction as here printed for the purpose of pointing out the special clauses of which appellant complains.

It is apparent from this instruction that the jury might properly believe therefrom that, although Strong, after complaint had been made by Booth as to the character of the oil, made such a test thereof as is usually made by competent persons in determining whether it was dangerous for use, and reasonably believed that it was not dangerous and corresponded to the standard indicated by the inspector's stamp, he was nevertheless negligent in continu-

1. NEGLIGENCE IN SALE OF ILLUMINATING OIL: duty of dealer to test: statutes.

ing to sell it if, on an inspection by the oil inspector in the method prescribed by statute it would have been found not to be of the standard required by the statute. The allegation of negligence was that Strong, as defendants' agent, failed to have the oil in question inspected or examined by the oil inspector, and the evidence tended to show that on such inspection it would have been discovered by the oil inspector, using the tests which by statute he is required to use, that it was dangerous. The jury was told that it was "important to determine whether the test which Strong made and the results which he obtained therefrom were such as to justify an ordinarily prudent man in believing that the oil in question was up to the required standard," and this, no doubt, was correct, but the jury was also told that the statute required a closed test, and in determining the question of Strong's negligence they "should take into consideration, not only the manner in which he made the test, but also the testimony of experts as to what such a test would disclose so far as it bears thereon." Unless Strong was negligent in not securing a test by the oil inspector according to the statutory method, after he was advised that something seemed to be wrong with the oil, or in not himself making a closed test such as experts would make, this instruction was wrong and misleading; for Strong had the right to rely on the inspector's brand, indicating that the oil in the barrel was of the standard required by statute, until he had information such as would indicate to a reasonably prudent man dealing in oil that it did not correspond to the standard indicated by such brand, and the real question for determination is as to the duty of Strong after receiving such information.

The statute with reference to the inspection and sale of petroleum products for illuminating purposes (Acts 30th General Assembly, chapter 87; Code Supp. 1907, sections 2503-2510) provides for the appointment of a chief inspector and fourteen other inspectors, who, under rules and

regulations for inspection prescribed by the state board of health, and with the instruments and apparatus prescribed by said board, shall inspect and test all illuminating oils kept for sale within the state, and reject all oils for illuminating purposes which will emit a combustible vapor at a temperature of one hundred and five degrees "closed test," and brand barrels or packages containing oil which is found to meet the statutory requirements as "Approved," with the degree of flash test as determined by him, and it is further provided that any persons selling any product of petroleum for illuminating purposes, which has not been inspected and branded as provided, or shall knowingly or negligently sell any product of petroleum not inspected and tested, or any such product which will emit a combustible vapor at a temperature of less than one hundred and five degrees, closed test (except as otherwise specified), shall be subject to fine and liable in civil action for damages sustained on account of such sale. The seller is not required by statute to make such closed test as is required to be made by the oil inspectors. It is true that the statute seems to specifically prohibit the sale of any illuminating oil which will emit a combustible vapor at a temperature of less than one hundred and five degrees, closed test, but we think the plain purpose of the statute, reading all of its provisions together, is to relieve the seller from responsibility for the sale of illuminating oil properly branded, so as to indicate its compliance with the statutory standard, unless there is negligence. There is no requirement that the seller provide himself with apparatus for making a closed test such as the statute requires to be made by the inspector, and there is no specific requirement that the seller shall under any circumstances call upon a state inspector to determine the character of oil which has been purchased in a barrel properly branded. We think, therefore, that the duty of the seller, on receiving information such as would lead a reasonably prudent man to think that the oil which he is

selling does not correspond to the brand on the barrel, is to make, or to cause to be made, such inspection as would reasonably determine whether the oil which he is selling is in fact dangerous; that is, of a lower standard than that required by statute. The circumstances might be such as to require the calling of the inspector, or the making of a closed test by an expert; but we can not say that this is his duty as a matter of law. The court should have left this question to the jury, instead of directing them that Strong was negligent if, after the information was received he continued to sell oil which, as subsequently disclosed by the oil inspector, or an expert making the closed test, with the apparatus prescribed by the state board of health, was below the required standard. It would have been proper, no doubt, to leave to the jury the determination of the question whether, by the means at hand and with the knowledge which the ordinarily prudent dealer would be presumed to have as to the nature of illuminating oil, and the method of determining its safety for use, Strong was negligent in selling this oil to plaintiff, in view of the information which had been communicated to him that it seemed to be dangerous; provided, of course, the allegations of negligence were broad enough to cover such action on his part. But we think it was not proper to direct the jury to test his negligence by determining what an expert or an inspector using the statutory methods might have discovered.

II. Appellants complain of the refusal of the court to give a cautionary instruction directing the jury not to allow any question of sympathy or sentiment to enter into their deliberations, and to base their verdict, if any be rendered for plaintiff, alone upon the evidence relating to the particular grounds of recovery which the evidence tended to establish. The court did direct the jury very fairly and quite explicitly as to what they might and what

2. PERSONAL INJURY: damages: cautionary instruction.

they might not take into account in estimating plaintiff's damages, and in an ordinary case, we think it would not have been error to refuse the instruction asked in view of the character of the charge which was given. But it must have been apparent to the court that this was a case likely to appeal very strongly to the sympathies of the jurors, and in which, owing to the rules of law limiting plaintiff's recovery to loss of time and pain and suffering from his own injuries, loss of his wife's services and society from the time she was injured up to her death, which occurred about eight hours after the accident, and to the loss of services of his children until they would have attained majority, the jury, if they found for plaintiff on the issues of negligence, would be likely to feel an inclination to award a much larger amount than the evidence would justify. The court did in fact, as it appears, appreciate this danger, for the jury was instructed that, so far as loss of his wife's society and services were concerned the plaintiff could only recover fair and reasonable compensation for loss of such society and services from the time of injury until death, which, as the court said, could obviously not be large, and the court added that, while this rule of law might seem strange to the jurors, it was their duty to obey the law in making up their verdict. The jurors did in fact, as appears from their special findings allow plaintiff $300 for the loss of the society of his wife and $500 for his own pain and suffering, although his injuries were so slight that he was allowed only $6 for loss of time resulting from such injuries. The court evidently considered these allowances as unwarranted by the evidence, for he reduced the verdict to the sum of $725. We are inclined to think the allowances in these respects so excessive under the evidence that they indicate passion and prejudice, and that for this reason the verdict should have been set aside, and that the remittitur ordered by the court did not amount to a full discharge of the duty of

the court in this respect.  *Ahrens v. Fenton,* 138 Iowa, 559.  In view of the necessity of granting a new trial for error in giving and refusing instructions.it is not now necessary to say more as to the excessive character of the verdict than to indicate that it tends to show the jury to have been unduly influenced by sympathy for the plaintiff, and that on another trial some such instruction as that asked for the defendants should be given.

III.  We can not agree with the claim for appellants that a verdict should have been directed in their favor.  Under proper instructions it was for the jury to say whether Strong, as defendant's employee in charge of their business, acted as a reasonably prudent man in continuing to sell oil from this barrel after a warning that one purchaser had found it to be inflammable, without calling for an official inspection or making a different or more thorough test than that which he in fact made.

3. SAME: negligence: fact question.

For the reasons pointed out, the judgment is *reversed.*