MORONEN v. McDONNELL.

1. MASTER AND SERVANT — PERSONAL INJURIES — NEGLIGENCE — MINES.

The relation of master and servant had ceased to exist, as between his employer and plaintiff, who had been working as a laborer in a quarry and had stopped at noon to eat and rest, seating himself on the ground beside a public highway, knowing that blasting was being done near by, and who was struck by a piece of rock thrown by a blast; the fellow-servant rule and doctrines of safe place and duty to instruct were not applicable.[1]

---

[1] The question of injury to servant on master's premises before, after, or between hours of work is treated in notes in 12 L. R. A. (N. S.) 853 and 23 L. R. A. (N. S.) 954. And for effect upon master's liability for breach of statutory duty of fact that employee was resting at the time of injury, see note in 22 L. R. A. (N. S.) 309.

2. SAME—TRESPASSERS—DUTY TO WARN.

Plaintiff not being a loiterer or idle intruder, it was defendant's duty to give timely or reasonable warning of the firing of blasts.

3. SAME—EXPLOSIVES.

In blasting out rock for use in a stone crusher, defendant was chargeable with the requirement of "reasonable care, commensurate with the attendant dangers, and with the duty to" cover or protect the blasts or give persons near by timely warning of the explosion.[1]

4. EXPLOSIVES—DUTY TO COVER BLAST.

Reasonable precaution did not demand that defendant should cover a blast occurring 500 feet from any house, if sufficient warning was given to any persons in the immediate vicinity.

5. MASTER AND SERVANT—WARNING—PERFORMANCE OF DUTY TO NOTIFY SERVANT OF EXPLOSION.

Where blasting had been carried on for three seasons without injury to person or property under the system adopted by defendant, and he employed competent men to perform the work, who gave notice by repeated calls of setting off explosions or blasts, who, in the instance in question, went both ways down the highway, one of them going within 50 feet of plaintiff and the other workmen resting in a place that they considered safe from the expected blast, defendant was not negligent; nor was the situation materially affected by the fact that plaintiff relied on the judgment of his fellow workmen in choosing the place, not having had so much experience as they.

6. SAME.

And where plaintiff had warning of one blast without taking any precautions, or attempting to avoid it, an omission to repeat the warning in the case of a second blast, not inducing plaintiff to remain or to incur additional peril, was not such negligence as to raise an issue for the jury.

Error to Gogebic; Cooper, J. Submitted April 24, 1913. (Docket No. 40.) Decided September 30, 1913. Rehearing denied June 4, 1914.

[1] As to liability for injury to person or property from concussion caused by blasting, generally, see notes in 12 L. R. A. (N. S.) 389 and 27 L. R. A. (N. S.) 425.

Case by John Moronen against Patrick McDonnell for personal injuries. Judgment for defendant upon a directed verdict. Plaintiff brings error. Affirmed.

*O'Brien & Le Gendre* and *George O. Driscoll,* for appellant.

*James A. O'Neill,* for appellee.

STEERE, C. J. This is an action of trespass on the case instituted in the circuit court of Gogebic county January 24, 1911, to recover damages of defendant for personal injuries resulting to plaintiff from being struck on July 22, 1910, by a piece of rock thrown from a blast of dynamite at a quarry where defendant was getting out and crushing stone for road construction. At the conclusion of plaintiff's testimony in the trial court, a verdict was directed for defendant, chiefly on the ground that plaintiff, by his own evidence, was shown to have assumed the risk, having himself selected the place where he was injured and stopped there to dine and rest, knowing blasts were being discharged near by. He has now removed the case to this court upon a writ of error to review such ruling.

Defendant was a contractor engaged in paving in the city of Ironwood, and also operated a stone crusher some distance north of the city, on the south side of a hill, where suitable rock for his work was found and convenient to a county road running north from the city. The stone crusher stood near the bottom of the hill on its south side near to a rock face, or bluff, from which rock was blasted for crushing. The blasting was done by two experienced miners who had been especially employed for, and put in charge of, that work. A crew of laborers, of mixed nationality, varying from 18 to 26 in number, was employed in tramming, stripping, drilling, and other

work necessary to carry on the undertaking. The rock was moved from the place of blasting to the crusher by tram cars, run on tracks laid for that purpose, as occasion required. At the time of the accident in question the place of excavation was about 180 feet north from the crusher and about 175 feet west from the highway, which ran, curving past the hill, to the north. Plaintiff began work there the morning of the day he was injured, having previously been employed on the contract in the city. During the forenoon he was engaged in stripping or removing the overburden of earth upon the rock, preparatory for blasting, and worked near the men who were drilling holes in the rock for that purpose.

Owing to the distance from their places of residence, the men working there carried their dinners with them. The blasting was done, by the men in special charge of that work, twice a day, once during the noon hour, while the other laborers were away eating their dinners, and again after quitting time in the evening. The men worked from 7 a. m. to noon and from 1 to 5:30 p. m.

Plaintiff is a native of Finland and was 49 years of age when injured. He had been in America about two years and spoke little, if any, English. Several of his countrymen worked in the crew, with whom he could and did converse.

During the noon hour the men were released from their work as usual and went where they pleased to eat their dinners. At 12 o'clock dinner was called, and at the same time a warning was given by a cry of "fire," the customary call when blasts are about to be set off. Thereupon all the men, except those in charge of the blasting, being at liberty until 1 o'clock, took their dinner pails and went some distance away for safety, and wherever they chose, to eat their dinners. Plaintiff took his dinner pail and went with the rest. They went around to the north side of the

hill, about 350 feet from the place of blasting, and stopped at a spot where the men regularly ate their dinners, beside the highway on a little path, used as a short-cut at a turn in the road, where were some bushes and small trees. This was a favorite and customary place where many of the men had regularly eaten their dinners under like circumstances, without accident, not only during that season but for two previous seasons while the work was in progress there.

An intelligent witness of plaintiff's, a fellow countryman, who worked on the crusher, testified, among other things, that there were about ten Finns in the crew; that most of the men ate their dinners at that place, while the blasting was done during the noon hour, saying:

"It was about the same place where the boss ate his dinner, but the Finns was in a certain place and the boss with some English-speaking workmen was eating a little ways from there. * * * Taking from the place of the crusher the boss and the men was exactly the same distance from it."

This witness also testified that he had handled dynamite in the old country and was familiar with its use, knew it was dangerous to be right by when they were blasting, and in such case the men—

"Go away to a place where they think they are safe and then they stay there and eat their dinner; they want to go to a safe place. * * * I thought it was safe all the time I was there. * * * If I thought it was not safe I would have gone further. * * * I have known Moronen about three years next June. * * * We both went to dinner together. He went where the rest of the Finns went and he thought he would be safe where the rest of them were safe. * * * He didn't say anything, but when he saw the rest run he ran after, and then when he got over there he asked if that was the place to take dinner. * * * I am a man of experience, * * * but in this certain place I didn't know to

be afraid because there never was any rocks flying before."

The foregoing quite clearly discloses the circumstances under which, and reason why, plaintiff selected the place where he was injured to eat his dinner. He knew he was at liberty to go where he pleased during the noon hour, and he knew there was to be blasting. He inquired of his more experienced countrymen and selected that place in order to be with them, evidently depending more or less on their judgment. He testifies:

"When they hollored 'fire' I knew what that meant; the fellows told me they was going to blast. * * * When we started for dinner they blasted, and after we was through with our dinner they blasted. * * * I was sitting down with the dinner pail between my legs when the first blast went off. * * * I just wanted to get away from the flying rocks and I went to eat my dinner with the other fellows. I went away because I wanted to get away from the flying rocks. Yes, I could have gone as far as I wanted to —as far as I thought it necessary to go to be safe. If the other fellows went farther out I would have gone, but I did not know rocks would fly that far. I just went where I did because somebody else went."

His inexperience apparently put him to no disadvantage compared with those who had previously worked there. That was the third season the men had eaten their dinners at that place while blasting was going on, without injury, and they thought it safe. In this instance they were manifestly in error, for, though several blasts had been fired while they were sitting there that day, a blast fired between 12:30 and 12:45, as plaintiff sat in a reclining position, after concluding his meal, threw a piece of rock "bigger than a strong man's fist," so that it struck him on his right leg, inflicting a serious wound, which necessitated a surgical operation and permanently crippled that member.

Plaintiff's declaration contains two counts; the first alleging and based upon the relation of master and servant, charging negligence and failure of duty in not providing plaintiff a safe place in which to work and eat his dinner, failure to instruct and give warning, and failure to properly protect the blasts. The second count is apparently based on the theory that such relation was suspended during the noon hour, but that defendant was negligent in firing dynamite in that locality, with workmen in the vicinity, without guarding and covering the blasts, and in not giving proper notice and warning such as—

"Defendant would have been reasonably bound to have used and exercised for the safety, protection, and benefit of any third person (not in defendant's employ) who was or might be engaged in eating his dinner and reposing at the place where plaintiff was eating his dinner and reposing at the time plaintiff was injured."

During the noon hour, from 12 to 1 o'clock, plaintiff and all the other employees, except those in charge of the blasting, were not on duty, were at liberty, free to go wherever and do whatever they pleased. Plaintiff fully understood this. They were, for that time, dismissed from service. They were not at defendant's plant, nor in charge of any of his property, nor under his orders, nor on his premises, but on the highway, at a location they had selected some distance away from their employment. We think, in the light of the following authorities as applied to the circumstances of this case, plaintiff was neither, at the time of the accident, engaged in a common employment with the other workmen so as to be a fellow-servant with them nor did the relation of master and servant exist between him and defendant, in the strict sense requisite to make applicable the fellow-servant rule or the doctrine of safe place and duty to instruct due from master to servant. *Dickinson* v. *Railway*

*Co.,* 177 Mass. 365 (59 N. E. 60, 52 L. R. A. 326, 83 Am. St. Rep. 284) ; *Mirabile* v. *Murphy Co.,* 169 Mich. 522 (135 N. W. 299) ; *Broderick* v. *Depot Co.,* 56 Mich. 261 (22 N. W. 802, 56 Am. Rep. 382) ; Baldwin on Personal Injuries (2d Ed.), § 374.

Plaintiff's relations with defendant, however, required him to be in the vicinity of the place of his employment, conveniently near to resume his labors when the noon hour expired. He was not a loiterer nor idle intruder in that locality. Defendant was presumed to know plaintiff and the other workmen were near by, and it was defendant's duty to give reasonable and timely warning of the blasts to those who might be upon the adjacent highway and to the workmen whose employment had brought and detained them in that vicinity. He had a right also to assume that, being at liberty to go where they pleased, they would, on receipt of timely notice and warning, seek a place of safety and avoid the danger.

When using high explosives in carrying on his work, it was the duty of defendant to exercise reasonable care commensurate with the attendant dangers, and either by some proper method, cover and protect the blasts to prevent them from so throwing fragments of broken rock as to imperil the safety of persons near by, or to give them adequate and timely warning of expected explosions in order that they might take proper precautions to avoid injury. *St. Peter* v. *Denison,* 58 N. Y. 416 (17 Am. Rep. 258) ; *Gates* v. *Latta,* 117 N. C. 189 (23 S. E. 173, 53 Am. St. Rep. 584) ; *Wright* v. *Compton,* 53 Ind. 337.

If the work is being done in a city or village, or in any other place where adjacent property and the presence of numerous persons render protection by warning impracticable or inadequate, covering the blast might be imperative and its omission would be negligence. In this case the blasting was in the country, with but one house near by, distant some

500 feet, and a passing highway. Under the methods of conducting the business and system of warning, which were pursued during the three seasons the blasting had been carried on, no injury to person or property was done until the day in question. Competent men of many years' experience were doing this work. They gave ample notice by repeated calls before the firing, and one of them went each way upon the highway to notify and prevent persons from passing while the blasting was being done. One of them named Lindberg, a man of 23 years' experience, testifies:

"Me and my partner had full charge of the dynamite. * * * We set off the powder that day at noon. We hollered 'fire;' both of us gave warning. That duty was put upon both of us by the defendant. * * * So that the workmen would know to get out of the way and protect themselves against injury on account of the blast. * * * We give it before we light, and then we used to holler 'fire' until the first hole went off. * * * If we had two shots we would say two shots and if we had more we said that. * * * I used to go north and my partner south. * * * On the day Moronen was hurt I went on the north side the same way. * * * I did not go so far as the men were. I hollered to them from 50 feet closer to the crusher. * * * I stayed there until the shots went off. * * * I worked there three summers and always did the work the same way."

Under the circumstances of this case, we do not think negligence can be predicated on failure to cover the blast, provided proper notice and timely warning were given.

That a warning was given at the noon hour when the men were released for dinner, and that plaintiff heard it and knew, or learned at once, its import is undisputed. He testifies that he knew what it meant, and he went away because he wanted to get away from the flying rocks; that he went as far as he

thought it necessary to be safe, and if the other fellows went further he would have gone; he also says that he did not know the rocks would fly that far, and the evidence shows the others did not, and from their experience they believed they would not.

It is claimed for plaintiff that it was the duty of defendant to give an adequate and distinct warning of each blast. He, with one of his witnesses, testified that, when the later blast, which inflicted the injury, was fired, no warning of it was given, and that they did not hear any warning. This would raise an issue of fact under the evidence for the jury to decide if controlling or material. Authority is cited to the effect that such repeated warnings should be given; and this is the rule where omission to give them makes any difference in plaintiff's conduct or leads him into greater peril; but in this case plaintiff, with notice of the proposed blasting, had selected his place of retreat for the noon hour with his fellow workmen at an accustomed spot which they believed safe from the blasting. He had the warning which he acted on in going there, and he remained there believing it to be safe. It is difficult to conceive how a failure to repeat the warning would or could make any difference under the circumstances. We do not think a failure to submit that question to the jury was error.

There is a marked variance between the pleading and proofs, which defendant insists is fatal, in the particular that the declaration alleges plaintiff "carried his midday meal or dinner to his said working place and remained at said last-mentioned place during the noon hour, and there during said noon hour, ate his midday meal, rested and reposed," etc., "and there received his injury," while his evidence shows that he was 350 feet from there on a public highway, where he had gone to avoid the blasting at said working place, presenting a different state of facts involving different questions of law. While this presents

a somewhat serious technical question of pleading which might otherwise demand further consideration, we conclude that upon the vital issue of defendant's actionable negligence he is shown to have given plaintiff notice, which was understood, of the proposed blasting, sufficient in time to make retreat to a safe place, with full freedom to go as far and whereever he desired.

Plaintiff was a man of mature years and, apparently, average intelligence. He testified that he was warned and knew there was to be blasting at the noon hour; that he was free to go; and that he left the place where the blasting was to be done in order to get away from the danger and find a point of safety. He selected his place of dining with that in view. That he deferred, in choosing such place, to the judgment of some of his countrymen who had worked there longer and were more familiar with conditions, was natural; but it was nevertheless his selection and makes manifest that he was at no disadvantage in comparison with them, and assumed no greater risks than they, by reason of his inexperience. He says it was on their judgment he selected the spot where he was when injured. The defendant cannot be held responsible for their error in judgment.

Under the facts shown, the learned trial judge rightly decided that plaintiff was given sufficient warning, with abundant time and opportunity to withdraw to a place of absolute safety, and that in selecting his place of retreat he assumed the risk.

The judgment is affirmed.

MOORE, C. J., and MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.