McLAWSON v. PARAGON REFINING CO.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—EXPLOSIVES—USE OF KEROSENE FOR STARTING FIRES.

The simple act of using kerosene for the starting of a new fire does not preclude the user thereof from recovering, in an action to recover damages for personal injuries resulting from negligent substitution by defendant of gasoline for kerosene, upon the ground that he was guilty of contributory negligence as a matter of law.

2. SAME.

The pouring of kerosene directly from a can in relighting a dying fire or kindling a new one, without the party first assuring himself there is no fire in the stove, is negligence *per se*.

3. SAME—EVIDENCE—QUESTION FOR JURY.

In an action to recover for death due to the alleged substitution by defendant of gasoline for kerosene used by deceased in starting a fire, where there were no eyewit-

nesses and only the exploded can and the character and location of the burns upon the body of the decedent, it was a question for the jury whether deceased acted without first assuring himself there was no fire in the stove in which he was using the liquid.

4. Same—Injury to Minor Son—Licensee.

A minor who resides with his parents and is a member of their household, is entitled to use kerosene in starting a fire exactly the same as the parents, and is not a mere licensee.

5. Same—Explosives—Substituting Gasoline for Kerosene—Liability for Injuries.

One who delivers to another such an article or substance as gasoline for kerosene is liable for injuries resulting therefrom, even though he is ignorant of its noxious character, if, in the exercise of ordinary prudence, he or his servant should have possessed such knowledge.

6. Explosives—Gasoline—Judicial Notice—Matters of Common Knowledge.

Judicial notice is taken of the fact that gasoline, either alone or mixed with kerosene, constitutes a highly explosive agent and that extreme care should be used by vendors thereof to prevent their mixture.

7. Negligence—Substituting Gasoline for Kerosene—Liability for Injury—Question for Jury.

Whether defendant's agent, in making investigation as to the nature of the contents of a can supposed to contain kerosene to be furnished to plaintiff's decedent who was killed as a result of using same to start a fire, exercised that high degree of care imposed upon him by the fact that he was handling a dangerous and, under certain circumstances, a highly explosive substance, was a question for the jury

Error to Ingham; Collingwood, J. Submitted June 14, 1917. (Docket No. 43.) Decided September 27, 1917.

Case by Frank McLawson, administrator of the estate of Arthur I. McLawson, deceased, against the Paragon Refining Company for the negligent killing

of plaintiff's decedent. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Elmer N. Peters* and *Harry H. Partlow,* for appellant.

*Alfred J. Mills* (*Ira C. Taber,* of counsel), for appellee.

This action is brought to recover damages arising out of the death of Arthur I. McLawson. Plaintiff, administrator, was the father of said McLawson. Plaintiff's decedent, a young man, past 19 years of age, who lived with his father and mother, met his death in the following manner: On the afternoon of October 7, 1915, between 2 and 3 o'clock, in the absence of both of his parents, he attempted to kindle a fire in the kitchen range, and in doing so used a quantity of kerosene or kerosene mixed with gasoline. No one was present at the time he made the attempt to kindle the fire, but the can containing the combustible fluid, whatever it was, was found in close proximity to the stove, and gave evidence of having suffered from a violent explosion, the metal being rent asunder. A fire followed the explosion. The burning liquid was cast upon McLawson's person and clothing, and resulted in his sustaining very serious burns to his hands, arms, shoulders, and his body from his waist downward to his ankles. The fire upon his person was soon extinguished, and he received medical treatment very promptly. He was conscious on the evening of his injury and on the day following and at intervals thereafter until he died on October 11th. His death unquestionably resulted from his injury.

The record discloses that the defendant is engaged in the city of Lansing and surrounding territory in the sale of oil and gasoline; that on Saturday the 2d day of October it made two deliveries of its product to

Taylor & Soper, a copartnership owning and operating a grocery in the city of Grand Ledge. On the first occasion 10 gallons of kerosene were delivered and poured into the receptacle provided by Taylor & Soper for that purpose. The clerk in charge of Taylor & Soper's business requested defendant's agent to leave a larger amount, but was advised that he had no more kerosene, but had two cans of gasoline which he was taking to another customer. A short time afterwards defendant's agent returned to the business place of Taylor & Soper, and announced that the two cans of liquid which he had supposed to be gasoline had turned out to be kerosene, and these cans were then emptied into the large kerosene tank of Taylor & Soper.

The evidence further discloses that plaintiff, decedent's father, purchased from Taylor & Soper 2 gallons of this liquid under the impression that it was kerosene on Monday the 4th day of October, and that he transported the same to his home in Grand Ledge, placing it in the woodshed, where it was habitually used as occasion required for the purpose of lighting fires. Plaintiff kept beside the can in the woodshed an old tomato can with an open top, into which was poured from time to time such small quantity as was necessary to kindle a fire, the can itself remaining in the woodshed.

It further appears that on Tuesday, the 5th day of October, Taylor & Soper discovered that something was wrong with the oil in the kerosene tank through themselves trying to use a small quantity of it to light a fire. They immediately placed themselves in communication with an official of the defendant company, who proceeded to Grand Ledge, and, after making an examination and test of the liquid in the kerosene tank, he advised Taylor & Soper to empty the tank, destroy the contents, and to advise all customers who

198—Mich.—15.

had purchased from the tank to destroy the oil so purchased. This Taylor & Soper undertook to do so far as possible, but failed to give any notice to the plaintiff of the dangerous character of the liquid.

It further appears that on Wednesday, the 6th day of October, Mrs. Ida McLawson, mother of the decedent, used a small quantity of the liquid for the purpose of igniting a fire on the morning of that day. She testified that upon applying a match the fire puffed and burned very fiercely, but that she reported this to no one, being of the opinion that she had used a little too much of the oil.

The testimony of several other witnesses was introduced, tending to show that the use of the oil in small quantities for the purpose of lighting fires was followed by more or less violent explosions.

Upon conclusion of the plaintiff's case a motion was made on behalf of the defendant for a directed verdict. This motion was granted, the court saying in part:

"This court cannot take judicial notice of the fact that such a proceeding to light a fire is a safe way, neither can it take judicial notice of the fact that it is an unsafe way to light a fire. There is no one to tell us just what Arthur McLawson did. He is dead. But there are circumstances which speak as loud and as distinctly as any witness could. The testimony in this case is that the last time the mother handled the kerosene can it was in the woodshed, and on Wednesday morning she left it in the woodshed and kindled the fire from oil in the small receptacle. From that time until the fire, which resulted in the death of Arthur McLawson, there is no testimony in this case showing what had become of that oil can, but after the fire, and within half or three-quarters of an hour, the can was found in front of the stove evidently having exploded.

"Now in the absence of testimony that any other member of the family took the can into the kitchen, it can be concluded that Arthur McLawson brought

that can from the woodshed into the kitchen. If he did not bring it into the kitchen, he at least attempted to start that fire with oil from the can containing this fluid standing or being held by the side of the stove. Now, gentlemen, what was the approximate cause of the death of Arthur McLawson? His death occurred as the doctor testified from burns. How were those burns received? Is it reasonable to suppose that they could have been received from placing a cupful more or less of kerosene oil on top of cobs in a cold stove when the covers were removed from the stove and lighting them? There is testimony to show in this case that such a proceeding would make a flash up into the kitchen, but there is no testimony to show that it would hurt anybody. There were at least two witnesses, who testified that they used this same fluid in this way, and, while there was a flash and a shock to them possibly, there was no damage.

"Now, the proximate cause of the burns which caused the death of Arthur McLawson was the fact that the fluid in this can took fire and burned him. If that can had been in the woodshed where Mrs. Mc-Lawson left it, and Arthur I. McLawson had taken a cupful of that fluid and poured on the cobs and lighted it, he could not have been injured by the fluid that was in that can. That is just as clear as can be. No reasonable man could dissent from that. Then, if Arthur McLawson had not lighted that combination of cobs and oil in the stove, with that can of fluid setting near the stove, there could have been no accident which would have caused his death. Then isn't it clear to any reasonable man that in lighting that fire with the oil while a gallon can of the fluid was setting by the side of the stove or held in his hands he himself was guilty of negligence which contributed to the accident. It seems so to me that the presumption regarding reasonable prudent conduct which would arise in cases of this kind is brushed aside, and we are confronted with the fact that the can was there in front of the stove when he lighted the fire, and we are forced to the conclusion that because of that fact in some way the fluid in the can took fire, the can exploded, and Arthur McLawson was burned.

"Now, gentlemen, in the absence of any other evi-

dence as to the freedom from negligence of Arthur McLawson, it becomes my duty to tell you that he was guilty of contributory negligence, and, being guilty of contributory negligence, he cannot recover, and so it becomes my duty to instruct you without leaving your seats to find the verdict for the defendant."

BROOKE, J. (*after stating the facts*). There are four assignments of error which may be considered together. They all relate to the action of the court in directing a verdict for the defendant solely upon the ground that plaintiff's decedent was guilty of such contributory negligence as to preclude recovery as a matter of law. Upon this point counsel for plaintiff assert that a person is not to be held guilty of contributory negligence as a matter of law unless all reasonable minds would reach the same conclusion under the undisputed facts. *Beach* v. *City of St. Joseph,* 192 Mich. 296 (158 N. W. 1045).

They assert that, while it has been held (*Riggs* v. *Standard Oil Co.,* 130 Fed. 199; *Dubois* v. *Luthmers,* 147 Iowa, 315 [126 N. W. 147]; *Morrison* v. *Lee,* 13 N. D. 591 [102 N. W. 223]) that to pour kerosene upon a fire for the purpose of replenishing it is an act of negligence *per se,* the use of kerosene for the purpose of starting a new fire is not to be held negligence as a matter of law, citing *Peterson* v. *Standard Oil Co.,* 55 Or. 511 (106 Pac. 337, Am. & Eng. Ann. Cas. 1912A, 625, and notes); *Ellis* v. *Republic Oil Co.,* 133 Iowa, 11 (110 N. W. 20); *Waters-Pierce Oil Co.* v. *Deselms,* 18 Okl. 107 (89 Pac. 212), affirmed in 212 U. S. 159 (29 Sup. Ct. 270); *Ives* v. *Welden,* 114 Iowa, 476 (87 N. W. 408, 54 L. R. A. 854, 89 Am. St. Rep. 379); *Chapman* v. *Pfarr,* 145 Iowa, 196 (123 N. W. 992); *Price* v. *Insurance Co.,* 92 Minn. 238 (99 N. W. 887).

They further assert that under the law in this State, where there is no eyewitness to the accident, which

results in death and the circumstances shown justify legitimate inferences, which bring the defendant's liability within the realm of probability, rather than leaving it one for mere conjecture, the case is one for the jury, citing, *inter alia, Lincoln* v. *Railway Co.,* 179 Mich. 206 (146 N. W. 405, 51 L. R. A. [N. S.] 710) ; *Teachout* v. *Railway Co.,* 179 Mich. 398 (146 N. W. 241).

The claim is made by counsel for appellant that, there being no eyewitnesses to the accident, the plaintiff is entitled to the presumption that his decedent exercised due care. In reply to the propositions advanced, counsel for defendant assert that the presumption of due care is not applicable to this case, because this court has held (*Mynning* v. *Railroad Co.,* 67 Mich. 677 [35 N. W. 811]), that such presumption vanishes where the testimony of an eyewitness or witnesses may be produced, and in this connection it is pointed out that plaintiff's decedent lived for four days after the accident, much of the time in full possession of his mental faculties, and his testimony as to what actually occurred at the time of the accident could easily have been secured and preserved. They urge that slight evidence is sufficient to overcome the presumption, and that such evidence may be furnished circumstantially even though no eyewitnesses are present at the moment of the occurrence of the accident. Reference is here made to the fact that the two gallon can containing the explosive fluid was found in a shattered condition immediately in front of the stove in which plaintiff's decedent was attempting to kindle a fire and to the further fact that the burns upon the person of decedent were such as to indicate beyond peradventure that the oil can was in his hands at the time of the explosion. They contend that the undisputed evidence, considered most favorably for plaintiff, renders it at least as probable that

the accident did not result from the negligence imputed to the defendant as that it did result therefrom. *Powers* v. *Railroad Co.*, 143 Mich. 379 (106 N. W. 1117).

They set out the following facts as bearing upon the question of the negligence of decedent:

"The fact that he poured the oil directly from the can itself is further evidence of his negligence. The fact that he did not use the open cup or receptacle which was in common use by his father and mother, when lighting a fire in their stove, is further evidence of his negligence. The fact that he did not assure himself that there were no live coals or ashes in the stove is further evidence of his negligence. The fact that the fire must have followed into the oil can and caused it to explode is further evidence of his negligence. The fact that the can was found directly in front of the stove and that his hands received the most severe burns from the explosion is further evidence of his negligence. The fact that no evidence was given or the *res gestæ* of the accident, though within the reach of plaintiff, is further evidence that he was negligent"

—and assert that from a consideration of those facts it cannot be said that decedent was free from contributory negligence, and that reasonable minds cannot draw different conclusions from the facts which stand undisputed upon the record. Reference is made to the case of *Molin* v. *Lumber Co.*, 177 Mich. 524 (143 N. W. 624, 48 L. R. A. [N. S.] 878), where this court said:

"The plaintiff has not averred a custom or practice in the locality or generally of starting fires in stoves with oil by reason of which defendant ought reasonably to have anticipated that his licensees would search for his oil and use it to start a fire. We know of no general custom or practice to make such use of kerosene oil."

While this court has never held that the use of kerosene for lighting fires is not negligence *per se*, it is

equally true that it never has held the contrary.   The examination of the jurors who sat in this case and the testimony of several witnesses tends to show that this practice, whether extra-hazardous or not, is one which is extremely common, if not well-nigh universal in the vicinity where the accident occurred.   We are inclined to the view that it should not be held that the simple act of using kerosene for the starting of a new fire should preclude the user thereof from recovering upon the ground that he was guilty of contributory negligence as a matter of law.   A different question, however, is presented when the evidential facts are considered.   If plaintiff's decedent attempted to re-light a dying fire or to kindle a new one without first assuring himself there was no fire in the stove, by pouring kerosene directly from the can, this act, in our opinion, would plainly be negligence *per se*.   The silent witnesses, the exploded can, and the character and location of the burns upon the body of the decedent very strongly point to the conclusion that this is what actually was done, nevertheless we have reached the conclusion that it is not the province of the court to so determine, but the question is one of fact for the jury under proper instructions.

On behalf of the defendant it is urged that if the verdict was properly directed upon any ground the decision should not be disturbed, and in this connection it is said that plaintiff's decedent was a mere licensee in his father's house, and as such is precluded from recovery under the decision in *Molin* v. *Lumber Co., supra*.   With this contention we are unable to agree.   Plaintiff's decedent was a minor residing with his parents, a member of the household, and as such was entitled to use the kerosene exactly the same as were his parents.   It is next contended that, inasmuch as it appears beyond dispute in the record that defendant's agent, Brown, was a careful and competent

employee, and that he made a careful personal inspection of the contents of the cans before emptying them into the kerosene holder upon the premises of Taylor & Soper, if a mistake was made by Brown, such mistaken act, as shown by this record, was not within the scope of his employment, nor an act for which the defendant should be held responsible. We agree with defendant's counsel that there was no conscious adulteration of the kerosene either by the defendant or its servant. It is clear that Brown who delivered the oil believed that the contents of the two cans last delivered was kerosene, and that he came to that conclusion after a personal inspection of such contents, but, these facts being conceded, it does not necessarily follow that defendant may escape liability. In the case of *Wellington* v. *Kerosene Oil Co.*, 104 Mass. 64, it is said:

"It is well settled that a man who delivers an article, which he knows to be dangerous or noxious, to another person, without notice of its nature and qualities, is liable for any injury which may reasonably be contemplated as likely to result, and which does in fact result, therefrom, to that person or any other, who is not himself in fault" (citing cases).

We think it is equally true that one who delivers such an article or substance is liable even though he was ignorant of its noxious character, if in the exercise of ordinary prudence he or his servant should have possessed such knowledge. We take judicial cognizance of the fact that gasoline, either alone or mixed with kerosene, constitutes a highly explosive agent, and that extreme care should be taken by the vendors thereof to prevent their mixture. The record does not disclose whether the last two cans delivered to Taylor & Soper were painted red or white, but it does disclose with sufficient certainty the fact that through the agency of the defendant or its agent some gasoline

found its way into the kerosene holder of Taylor & Soper and that a part of this mixture was purchased by plaintiff, and was used by plaintiff's decedent at the time of his injury.

Under the circumstances of this case, and considering the baleful consequences which are likely to result to the user of a mixture of kerosene and gasoline when such use is made under the belief that the substance used is kerosene, we are of opinion that the question whether defendant's agent, in making such investigation as he made, exercised that high degree of care imposed upon him by the fact that he was handling a dangerous, and under certain circumstances a highly explosive, substance, is for the jury.

It is urged by counsel for defendant that, even though it is assumed that the defendant was guilty of negligence through the mistake of its driver, Brown, yet it should not be held liable therefor because that negligence was not the proximate cause of the death of plaintiff's decedent. This contention is based upon the claim that between such negligence and the death of said decedent there intervened the negligence of said decedent. This contention may be answered by saying that if the jury determine under proper instructions that plaintiff's decedent was guilty of contributory negligence, that determination ends the case.

The judgment is reversed, with costs, and a new trial is ordered.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred.