## CLEVELAND-CLIFFS IRON CO. v. METZNER.

### No. 9978.

Circuit Court of Appeals, Sixth Circuit.
July 9, 1945.

E. D. Alexander, of Detroit, Mich. (Alexander, McCaslin, Cholette & Buchanan, of Detroit, Mich., on the brief), for appellant.

George C. Quinnell, of Marquette, Mich., for appellee.

Before HICKS, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

Appellee, Horace E. Metzner, was awarded a judgment of $27,794.98 on a jury verdict against appellant, Cleveland-Cliffs Iron Company, for personal injuries, which he claims were caused by appellant's negligence.

On November 25, 1941, at about 11:30 a. m., appellant, using dynamite, wrecked a head frame or shaft house standing at one of its abandoned mines near Gwinn, Michigan. The structure was approximately 100 feet high, about 34 feet square, supported by 12 legs embedded in concrete and it was made of ⅝″ angle irons bolted together. Before placing the explosives against the structure, all its legs, except those at the southeast and southwest corners, were cut through or loosened at their foundations and the remaining legs were cut into about 3 inches, leaving about 1 inch of the web. The dynamite was placed against the flat side of the partially-cut legs about 4 inches above the ground on top of boards leaning against the legs with a sandbag on top of each charge of dynamite for the purpose of confining the force of the explosion and to catch flying shrapnel. The west side of the leg at the southeast corner and the east side of the leg at the southwest corner were left uncovered.

Appellee went to the scene of the explosion with a physician who was professionally employed by appellant for the sole purpose of sightseeing. At the time of the explosion, appellee was standing either upon or near a public road west of the shaft house, about 475 feet from the location of the dynamite charges. He was struck by fragments of steel set in motion by the explosion which injured him to the extent of destroying all the fingers of his right hand except his thumb and he also was severely injured in his right hip. Appellee, who was 56 years of age at the time of the accident, is a dentist, and after his injuries he was unable to resume the practice of his profession.

The automobile in which appellee was riding was stopped about 150 feet from the shaft house. He remained in the car until shortly before the explosion, at which time the owner of the car requested him to move it farther away. Appellee moved the car approximately 650 feet west of the shaft house, got out of it and walked to within 475 feet of the point of explosion and stopped. Several persons were at the scene of the explosion, some being employees, some onlookers and some amateur photographers. Five of these persons were nearer the dynamite charges than appellee, but none of them was hurt and all were in plain view of the employees of appellant who were wrecking the shaft house and exploding the dynamite. Bits of the steel structure were thrown west by the explosion, some of them short of, and some beyond, the place where appellee was standing. The dynamite was exploded by a detonator, the operator of which stood behind a concrete pier, about 15 feet high and about 7 x 7 feet at the base, located between appellee and the shaft house, about 200 feet west of the shaft house and slightly to the south and east of appellee who was standing approximately 275 feet west of the pier.

208

According to the evidence in behalf of appellee, no instruction was given to any person as to where he should stand during the explosion and no warning was given that any one of them was in a place of danger. Appellee knew it was the opinion of those in charge of the project that the automobiles were in an unsafe place before they were moved, but he had no knowledge of the explosive force of the dynamite or how it was to be used although he knew it was about to be exploded when he stopped walking toward the shaft house. The day before the explosion, appellant had experimented by making two test blasts on the structure and the force of the charge was almost doubled on the second test. The charge of the dynamite used at the time of appellee's injury was a half-size single stick of 90% gelatine dynamite, 5 inches in diameter, 8 inches long and weighing 8⅓ pounds. Gelatine dynamite is a more powerful explosive than ordinary dynamite.

Appellant urges that it was entitled to a judgment under Rule 50 of the Rules of Civil Procedure, 28 U.S.C.A. following Section 723c on the grounds, (a) that there is a complete absence of substantial evidence of negligence on its part; (b) that the evidence shows that appellee was guilty of contributory negligence as a matter of law.

■ Appellant, knowing of the presence of appellee at or near the premises at the time of the explosion, was chargeable with the duty of using reasonable care commensurate with the attendant dangers to guard appellee against injury.

Appellant's employees in charge of the use of the explosive knew that curiosity seekers and onlookers were at the scene of the explosion. It would be a cruel and inhumane doctrine to announce that a person using a dangerous instrumentality like dynamite might have actual knowledge of the fact that some person was in an unsafe place where he was likely to be injured at the time of an explosion and yet not be responsible for his injuries, on the theory that at the very moment of the accident he did not actually know the person was in a perilous position although he could have known it by looking in the direction of the person injured. Herrick v. Wixon, 121 Mich. 384, 80 N.W. 117.

■ We know of no better statement of the applicable rule than is laid down in the Restatement of the Law of Torts, vol. 2, § 336(b) and as it cannot be further condensed, we quote it: "If the activity which a possessor of land carries on upon it is one which, even though carelessly conducted, is likely to cause only some harm which, though substantial, is less than death or serious bodily harm, the possessor is not required to exercise care for a trespasser's safety unless he knows of his presence at some point made dangerous by the activity or unless he sees an object or hears a sound which makes him regard the presence of a trespasser as substantially certain or at the least highly probable. On the other hand, the gravity of the danger threatened by an activity which, unless carefully carried on, is likely to cause death or serious bodily harm, requires the possessor to exercise reasonable care not only when he knows that a trespasser is at some point made danerous by it or is reasonably certain or regards it as highly probable that he is at such a point, but also when he sees an object or hears a sound which causes him to realize that there is a substantial chance that the trespasser may be at such a point. This is in accordance with the tendency of the law not only to require a greater amount of care where life and limb are at stake, than where only some minor harm is likely to occur, but also to extend the duty of protection to persons to whom no duty would be owing if a less serious harm were threatened."

■ It was the duty of appellant to warn appellee concerning a danger of which appellee was excusably ignorant and to this end it was the duty of the persons engaged in the blasting to give timely notice to those who might reasonably be expected to be within its range and to all persons within the circle of danger. It is true appellee went upon the premises or nearby where the blasting was being done with his eyes open. His right there, whether it was a right by suffrance or license, implied or otherwise, was subordinate to the right of appellant to prosecute the work in which it was engaged. Appellee assumed all risk necessarily incident to such work prosecuted with skill and reasonable care, and such care as is usually exercised under like circumstances, but appellee had a right to expect and is presumed to have relied upon such degree of care, and he had a right to presume that the care exercised by appellant would be commensurate with the dangerous character of the explosive since dynamite is as a matter of law a dangerous agency and appellee had the right to expect the employees of appellant in charge of the

blasting to point out to those whom they knew were on the premises their dangerous proximity to the dynamite charge if such agents knew, or by the exercise of ordinary care could have known, they were in a dangerous position. The duty also rested on appellant's agents in charge of the work if they knew, or by reasonable diligence could have known, that injury probably would result from flying shrapnel, to cover the blast if timely warning was impracticable. Moronen v. McDonnell, 177 Mich. 691, 143 N.W. 8.

Jack Adams, directing the destruction of the shaft house, noticed that automobiles were parked within 100 feet of the shaft house and he shouted to the onlookers to take the cars out of there. Appellee heard the direction to move the cars and moved the car in which he drove to the scene of the blasting down the highway about 650 feet from the shaft. This same employee testified that immediately after he made the wire connections to the dynamite charges and while standing near the pier, he shouted "fire." An employee of appellant assisting in directing the work 'testified that the public road on which appellant was standing, or nearby, was under the supervision of Louis Oien, an employee of appellant who was supposed to guard it. Oien testified that while he was an employee of appellant that on the day of the accident he went there in his truck for the purpose of sightseeing and had no instructions to guard the road or to give warning to any person and that he neither guarded the road nor warned any person of danger. He also testified that he moved his truck when he heard someone say to move out of there, and that nothing was said to anyone as to how far back they should stand. This witness stated he was standing by the side of appellee when he was injured by the blast.

Leonard Letonen, another of appellant's employees who was assisting in preparations for the dynamiting and was told to assist in guarding the roads, testified there was talk of his guarding the road located about 600 feet from the scene of the dynamiting but that when he got down there, he looked for a good tree to hide behind and hid there because he had heard Adams, who was in charge of the dynamiting, talk about shrapnel flying.

Wilford Pleau, another of appellant's employees who assisted in preparing for the dynamite blast and who was instructed to guard one of the roads, testified he "did not pay any attention to the men around there." He said, however, he did stop one man from going closer to the blast.

We think it should have been left to the jury to decide, in view of the lack of knowledge of the appellee of the range of flying debris in the wake of the blast and the superior knowledge of appellant's agents, whether appellant exercised the degree of care imposed on it under the rule laid down in Moronen v. McDonnell, supra, and Beauchamp v. Saginaw Mining ( 50 Mich. 163, 15 N.W. 65, 45 Am.Rep. 30.

If one voluntarily places himself in or remains in a position which he knows, or by the exercise of ordinary care should know, is dangerous, he cannot recover for resulting injury unless such injury is due to the negligence of the other party after the peril of the party injured is discovered. Ordinary prudence requires every person to use his faculties of hearing and sight for his own protection and to avoid places of danger. Appellee knew the dangerous nature of dynamite and he also knew the material out of which the shaft house was constructed and the likelihood that pieces of it might be thrown through the air by the explosion but this knowledge does not necessarily make him guilty of contributory negligence as a matter of law. The dangers of which each of the parties to this action knew, or could have known by the exercise of ordinary care, is the test to be applied in determining the negligence of appellant and the contributory negligence of appellee. It is a matter of comparison of the degree of knowledge. Appellee is not guilty of contributory negligence unless it is established by a fair preponderance of the evidence that he knew, or by the exercise of ordinary care could have known, the perils of his position or that his knowledge of the situation was at least equal to that of appellant.

It cannot be presumed as a matter of law from appellee's general knowledge on the subject that he knew, or could have known by the exercise of ordinary care, that standing 475 feet from the explosion was dangerous. He had no knowledge of the quantity, quality or force of the explosive to be used, nor the way it would react. Appellant's employees were experts in the use and handling of dynamite. They knew the size and force of the charge and

the area which likely would be dangerous to persons.

There is no evidence that any employee of appellant in charge of the work in hand gave warning to appellee or anyone near him that he was in a dangerous area. It is true appellee moved one of the cars 650 feet from the shaft house and it might be inferred from this he thought that distance was safe, and it might also be inferred that by his leaving the car and standing 175 feet nearer the shaft house than the automobile, he knew he was in a dangerous position. But, under the facts, the inferences to be drawn from the conduct of appellee were for the jury.

Dr. J. B. Witters, who had taken appellee to the site of the explosion, testified that he set up and operated a motion picture camera west of the shaft house, but nearer to it than appellee who was west of him and also west of the shaft house. This witness also stated that no warning to move farther away, was given to him or anyone else, so far as he knew.

John Stark, an employee of appellant, but who was at the scene of the accident as a sightseer, testified that appellee was standing to his left and back of him about 8 or 10 feet on the other side of the E-Z Road. He said that at the time of the blast something tore a piece out of the right sleeve of his coat and that he heard something whiz by his left side. He said Adams motioned for the cars to be moved back and that when he was up at the shaft house before the explosion, Captain Curnow, who was assisting in preparing the blast, said that sometimes a piece of steel would fly like a bullet. This witness did not say that anyone else heard this comment.

Pete Nordeen, another employee of appellant, who was also at the scene of the blast as a sightseer, said just prior to the time of the accident, he was talking with appellee and at the time it happened they were about 35 or 40 feet apart and that he was standing almost directly behind the concrete pier on the east side of the southwest trail, and closer to the shaft house than appellee by 10 or 15 feet. He said he neither saw nor heard a warning signal.

Frank Gegetto, another employee of appellant, who was also at the scene from curiosity, said he was standing about 12 feet from appellee when he was hurt. He testified that the piece of steel that hit appellee glanced up and knocked a limb off a tree.

The issue of contributory negligence is based solely on the fact that appellee stood within 475 feet of the blast. When the conduct of appellee is viewed in the light of all the facts and circumstances, we cannot say that the record shows clearly and indisputably that appellee was guilty of contributory negligence. Upon this issue there are two reasonable but different views which might be taken and therefore the issue was one for the jury. Harris v. Township of Clinton, 64 Mich. 447, 31 N.W. 425, 8 Am.St.Rep. 842; Woods v. Chalmers Motor Co., 207 Mich. 556, 175 N.W. 449; McLawson v. Paragon Refining Co., 198 Mich. 222, 164 N.W. 668.

Appellant urges that the court committed error in several parts of its charge to the jury and also erred in failing to charge the jury on two of its requests. We find it unnecessary to consider these assignments in detail. Suffice it to say that for the reasons stated herein on the questions of negligence and contributory negligence, the charge of the court as a whole stated no wrong rule of law, nor did the court in its charge state any unwarranted material assumptions.

The Court's denial of the request was proper. Judgment affirmed.